## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DAVID MARSHALL DEAL,

               Petitioner,

vs.                             Case Nos.:   3:12-cv-1383-J-32JRK
                                                3:08-cr-368-J-32JRK

UNITED STATES OF AMERICA,

               Respondent.

_____/

## <u>ORDER</u>

This case is before the Court on Petitioner David Marshall Deal's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1).[1]  The United States filed a response opposing relief (Doc. 9), and Petitioner filed a reply (Doc. 12).  Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.  <u>See</u> <u>Aron v. United States</u>, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief).  For the reasons set forth below, Petitioner's motion to vacate is due to be denied.

---

[1]     Citations to Petitioner's criminal case file, <u>United States of America vs. David Marshall Deal</u>, 3:08-cr-368-J-32JRK, are denoted as "Crim. Doc. ___."  Citations to Petitioner's civil § 2255 case file, 3:12-cv-1383-J-32JRK, are denoted as "Doc. ___."

## I.      Procedural History

Over the course of several days in August and September 2008, Petitioner engaged in a series of online conversations with an undercover law enforcement officer posing as a 13-year old girl named "Alice."  Petitioner's messages became more explicit over time, and Petitioner grew eager to meet "Alice."   Petitioner inquired what was the most "Alice" would allow him to do with her (See Crim. Doc. 186 at 104-05), and Petitioner proposed engaging in different sex acts.   See id. at 136-39. Petitioner assured "Alice" that he would not hurt her, and that he would use a condom so that she would not get pregnant.   See id. at 137-38.   Petitioner also discussed taking explicit pictures of "Alice" once they met.   See id. at 141-43, 152-55. Eventually, Petitioner agreed to meet "Alice" in the parking lot of a Dave & Buster's, a restaurant and entertainment venue catering to adults in Jacksonville, Florida. Petitioner provided "Alice" with a meeting time and a description of his truck, as well as photographs of himself.   Law enforcement officers arrested Petitioner when he attempted to rendezvous with the fictitious girl.   Officers found condoms, a digital camera, and thong underwear (which Petitioner had discussed purchasing for "Alice") during a search of the vehicle.   Id. at 169.   Thereafter, law enforcement also obtained digital information from Petitioner's Yahoo! account, where they found videos of child pornography.

On May 27, 2009, a grand jury sitting in the Middle District of Florida indicted Petitioner on two counts of transmitting child pornography, in violation of 18 U.S.C. § 2252(a)(1) (Counts One and Two); one count of using the internet to attempt to

2

persuade or induce a person whom the defendant believed to be a minor to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count Three); and one count of attempting to employ or induce a person whom the defendant believed to be a minor to engage in sexual conduct for the purpose of producing a visual depiction thereof, in violation of 18 U.S.C. § 2251(a).   (Crim. Doc. 68).   The government dismissed Counts One and Two, the child pornography charges, following a magistrate judge's report recommending suppression of the videos retrieved from the search of Petitioner's Yahoo! account.   (Crim. Doc. 110; Crim. Doc. 112).[2] Petitioner proceeded to trial on Counts Three and Four, at the conclusion of which a jury found him guilty of both charges.   (Crim. Doc. 172).   Following a sentencing hearing, the Court sentenced Petitioner to a term of 120 months in prison for the conviction under Count Three and a term of 180 months in prison for the conviction under Count Four.   (Crim. Doc. 205 at 2).   Because the Court ordered the sentences to run concurrently, Petitioner's total term of imprisonment was 180 months.   Id.

Petitioner appealed his convictions to the Eleventh Circuit Court of Appeals. United States v. Deal, 438 F. App'x 807 (11th Cir. 2011).   Petitioner raised five grounds on direct appeal: (1) that the Court erred in denying a motion to dismiss the indictment because 18 U.S.C. § 2422(b) was unconstitutionally vague or overbroad; (2) that there was insufficient evidence to support the convictions; (3) that the Court

---

[2]      As the government moved to dismiss Counts One and Two on its own initiative following the magistrate judge's report and recommendation, the Court never adopted the report and recommendation and, accordingly, did not order suppression of the evidence seized from the Yahoo! account.   (See Crim. Doc. 174).

erred in admitting certain post-arrest statements and evidence seized from Petitioner's automobile; (4) that the United States elicited false testimony from Detective Kurt Jones (the undercover officer who posed as "Alice"); and (5) that the Court erred by refusing to instruct the jury on Petitioner's potential sentence. See Deal, 438 F. App'x at 809. The court rejected each of these arguments. Of particular relevance to the instant motion to vacate, the court of appeals rejected the contention that the United States had failed to prove that Petitioner believed "Alice" was 13 years old, explaining:

> Deal argues that the United States failed to prove that he believed that Alice was 13 years old or that Deal took a "substantial step" to accomplish his crimes, but his arguments are absurd. Deal was well aware of Alice's age: Deal contacted Alice after reviewing her online profiles at Yahoo! and VampireFreaks.com, both of which contained pictures of a young girl and described Alice as being 13 years old; Alice told Deal repeatedly that she was 13 and in eighth grade; Deal responded positively to Alice's question if "13 [was] ok"; and Deal remarked that he "fe[lt] like [he]'d be robing [sic] the cradle...." Although Deal testified that he believed Alice was older because her online photograph was dated and she frequented an adult restaurant, Dave and Buster's, a jury reasonably could have discredited Deal's testimony based on Alice's statements, Deal's keen interest in Alice's physical immaturity, and his acknowledgment in the first online conversation that a relationship with Alice could "get [him] in ... trouble[.]" Deal's testimony, which the jury discredited, provides substantive evidence of his guilt.

Id. at 810-11 (citations omitted). Also relevant is the Eleventh Circuit's rejection of Petitioner's arguments that the Court erred in admitting "suppressed evidence" obtained from his Yahoo! account and that the government elicited false testimony from Detective Jones. In regard to the Court admitting evidence from Petitioner's Yahoo! account, not only did the Eleventh Circuit note that defense counsel did not

4

object to its admission, but also that "Deal admitted that he had engaged in the conversations for that account." Id. at 811.  Regarding Petitioner's argument that Detective Jones "testified falsely that [Petitioner] contacted him in a romance chatroom" (instead of through Yahoo! instant messenger as was actually the case), the Eleventh Circuit responded that "Jones acknowledged during cross-examination that he had been mistaken and, in the light of overwhelming evidence of Deal's guilt, it is unlikely that Jones's earlier misstatement affected the jury's judgment[.]" Id. at 812 (citation omitted).  Accordingly, the Eleventh Circuit affirmed Petitioner's convictions. Id.

The Eleventh Circuit rejected Petitioner's request for a panel rehearing on September 29, 2011.  Petitioner did not request certiorari review by the Supreme Court.  Therefore, his conviction and sentence became final upon the expiration of the 90-day period for petitioning for a writ of certiorari, see Kaufman v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002), or on December 28, 2011.  Petitioner had one year from that date, or until December 28, 2012, to file a timely motion to vacate under 28 U.S.C. § 2255(f)(1).  Petitioner filed his motion on December 26, 2012, and the motion is therefore timely.

## II.     Petitioner's Motion to Vacate

Petitioner raises two grounds of ineffective assistance of counsel that he claims warrant vacatur of his convictions.  First, Petitioner alleges that counsel rendered ineffective assistance by failing to adequately investigate or prepare for Petitioner's trial.  Petitioner emphasizes that counsel failed to introduce enough evidence showing

that Petitioner actually believed "Alice" was 17 or 18 years old, such as a February 2009 printout of metadata viewable on Petitioner's computer suggesting that "Alice's" online profile picture was dated, evidence of Petitioner's knowledge of Dave & Buster's policy against admitting people under age 18 (and thus that because "Alice" once stated she liked to go to Dave and Buster's, she must have been older than 18), and a litany of other things related to Petitioner's mistake-of-age argument. Petitioner also contends that trial counsel inadequately investigated or prepared for the trial in ways that led to other alleged defects, including: inadequately cross-examining Detective Jones regarding his testimony that Petitioner found "Alice" in a Yahoo! romance chat room; inadequately cross-examining Detective Jones for allegedly not complying with Internet Crimes Against Children (ICAC) protocol; failing to object to, or question Detective Jones about, the manner in which he preserved logs of Petitioner's chats with "Alice"; and not objecting to a record of Petitioner's Yahoo! log-in activity.  In support of these arguments, Petitioner has submitted a report from a computer forensics examiner, Wayne Marney, see Doc. 1 at 33-57, which purports to identify discrepancies in Detective Jones's testimony, instances where Jones allegedly did not preserve chat logs or online profiles, and confirms the visibility of metadata related to "Alice's" picture.

Petitioner's second ground is that counsel rendered ineffective assistance by failing to ensure that Petitioner was tried before an impartial jury.  Petitioner points to publicity from an unrelated case in which a 7-year old girl from northeast Florida, Somer Thompson, was abducted and murdered, and contends that this incident

infected the jury panel with bias.  Petitioner argues that counsel should either have moved for a change of venue or questioned the venire members further to explore potential bias arising from the Somer Thompson case.  Petitioner contends that counsel's failure to do so prejudiced him by resulting in the empanelment of a slanted jury.

## III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).  A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In determining whether counsel performed

deficiently, the Court adheres to the standard of reasonably effective assistance. <u>Weeks v. Jones</u>, 26 F.3d 1030, 1036 (11th Cir. 1994).  The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance."  <u>Id.</u>  To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. <u>Strickland</u>, 466 U.S. at 694.  In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence.  <u>Id.</u> at 695.  However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## A. Ground One:  Inadequate investigation and preparation for trial

Petitioner alleges a multitude of ways in which counsel inadequately investigated or prepared for Petitioner's trial.  No absolute duty exists to investigate particular facts or a certain line of defense.  Rather, under <u>Strickland</u>, counsel need only conduct a reasonable investigation to fall within the wide range of competent

assistance.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1317 (11th Cir. 2000).

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at

691.  Petitioner's burden is extraordinarily high, for it is not enough to show that

some reasonable lawyer would have conducted the investigation differently.

Petitioner must show that <u>no reasonable lawyer</u> would have conducted an

investigation as trial counsel did.  "Even if many reasonable lawyers would not have

done as defense counsel did at trial, no relief can be granted on ineffectiveness

grounds unless it is shown that no reasonable lawyer, in the circumstances, would

have done so. This burden, which is petitioner's to bear, is and is supposed to be a

heavy one." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994).

### 1. Investigation and preparation concerning Petitioner's mistake-of-age defense

The main thrust of Petitioner's allegation of ineffective assistance is that

"[t]rial counsel failed to present available evidence to rebut the Government's

assertions and corroborate the testimony given by David Marshall Deal... at trial

relating to the central element in dispute, Deal's belief, knowledge and intent in

regard to the age of the case agent's undercover persona." (Doc. 1 at 9).  Petitioner

argues, for example, that counsel failed to highlight that before Petitioner contacted

"Alice" via Yahoo!, he saw her online profile on a social network called

VampireFreaks.com, where "Alice" allegedly had a profile picture that made her look

17 or 18 years old, <u>id.</u> at 11-12; that counsel failed to corroborate Petitioner's belief

that "Alice" was not in middle school if she once participated in an online chat at 3:06

p.m. when Petitioner knew Duval County middle schools did not end classes until 4:15 p.m., id. at 15-16; that counsel failed to present adequate evidence or witnesses supporting Petitioner's claim that he viewed metadata on his computer reflecting that "Alice's" profile picture was three years old, id. at 16-21; that counsel failed to prepare Petitioner for cross-examination questions concerning the metadata, id. at 22-23; and that counsel failed to corroborate Petitioner's belief that "Alice" must have been 18 or older if she enjoyed going to Dave & Buster's, id. at 21-22.

The record refutes the contention that counsel failed to adequately investigate or prepare for Petitioner's mistake-of-age defense. Rather, the record demonstrates that counsel introduced a fair amount of evidence to support Petitioner's claim that he believed "Alice" was 17 or 18 years old. Counsel elicited testimony from Petitioner that he only contacted "Alice" on Yahoo! after viewing her profile on VampireFreaks.com, where Petitioner testified "Alice" appeared to be 17 or 18 years old rather than the age of 13 represented on the profile. (See Crim. Doc. 176-1 at 7-8). Counsel presented Petitioner's testimony that he thought "Alice" was 18 or older because she stated that she frequented Dave & Buster's, which Petitioner knew from personal experience admitted only adults. Id. at 8. Counsel further obtained Petitioner's testimony describing metadata related to "Alice's" photograph, which had led him to believe the picture of "Alice" was at least three years old and thus, that "Alice" was older than the picture portrayed her. Id. at 9-13. Additionally, counsel retained the services of a computer forensic expert, Richard Connor, to substantiate Petitioner's testimony about metadata that suggested "Alice's" photograph was three

years old.  (See Crim. Doc. 187 at 137-47).[3]  Trial counsel then tied these points together in closing argument to assert that Petitioner believed "Alice" was older than 13.[4]  (See Crim. Doc. 188 at 27-36, 42).

Ultimately, the jury rejected Petitioner's effort to convince them that he believed "Alice" was not really a 13-year old, and found him guilty of the two remaining charges in the superseding indictment.  The jury reached that conclusion not because of any lack of effort by counsel, but because the undisputed content of Petitioner's chat logs with "Alice" demonstrated that he thought he was going to have sex with a 13 year old girl.[5]  The mere fact that a certain defense was unsuccessful

---

[3]     Petitioner contends that counsel should also have called his father and sister to testify about the metadata associated with "Alice's" picture.  (Doc. 1 at 17-19).  However, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir.1995) (en banc).  Given that Connor's testimony concerning metadata likely would have carried far more weight with a jury than that of Petitioner's father and sister, neither of whom is a computer forensics expert and both of whom are family members, the Court does not doubt that it was strategically reasonable for counsel not to call either to testify regarding the photograph's metadata.  Not only did Petitioner's father and sister lack the credentials to discuss metadata, counsel could reasonably have assumed that a jury would have discounted their testimony as biased, and that their testimony would have added little to Connor's testimony.

[4]     Although a 17-year old is a minor, under Florida law it is not unlawful for a person under the age of 24 to have intercourse with an individual at least 16 years of age.  See Fla. Stat. § 794.05(1).  As Petitioner was 22 years old at the time of the offense, had Petitioner convinced the jury that he reasonably believed "Alice" to be 17 years old, he may have had a valid defense under 18 U.S.C. §§ 2251(a) and 2422(b), which incorporate state law into the elements of the offense.

[5]     Notably, Petitioner took the stand but never disputed that he made the statements contained in the chat logs with "Alice" and that were entered into evidence at trial.  (See Crim. Doc. 176-1 at 5-16).  In fact, when confronted with the records of his online interactions with "Alice," Petitioner did not dispute their accuracy and admitted that he said what the logs reflected.  Id. at 47-51, 55-61, 70.

does not prove that counsel was ineffective, <u>Ward v. Hall</u>, 592 F.3d 1144, 1164 (11th Cir. 2010), and Petitioner has failed to show that <u>no</u> reasonable counsel would have investigated a mistake-of-age defense as his counsel did.  The trial record shows that counsel reasonably prepared for and pursued a mistake-of-age defense, and that counsel's performance did not fall outside the "wide range of competent assistance." <u>Chandler</u>, 218 F.3d at 1317.

What is more apparent is that Petitioner has failed to demonstrate prejudice. There is not a reasonable probability that additional investigation, preparation, or witnesses would have caused the jury to buy Petitioner's mistake-of-age defense.  The evidence from Petitioner's conversations with "Alice" patently showed that Petitioner thought he was interacting with a 13-year old girl.  For example, "Alice's" profiles on Yahoo! and VampireFreaks.com stated that she was 13 years old.  (Crim. Doc. 186 at 46-47).  Petitioner admitted he had seen Alice's profile on VampireFreaks.com, and confirmed that it stated she was 13 years old. (Crim. Doc. 176-1 at 40-41).  "Alice" personally told Petitioner on multiple occasions that she was 13 years old or that she was in the eighth grade.  The following is one such excerpt from early in their conversations:

CPTLIQUIDICE999999:  Do you have any problem with me being 22?

LIL_JAX_GURL:   No.  22 is great.  Usually it's my age that's the problem.

CPTLIQUIDICE999999:  Well, I'd rather be with someone younger. Most people think that's f[…]ed up.

LIL_JAX_GURL:   Yeah.  That's cool.  So, like, 13 is okay with you?

CPTLIQUIDICE999999:  Yeah.

LIL_JAX_GURL:   That rocks.  Most people don't want to talk to me when they find out how old I am.

CPTLIQUIDICE999999:  I don't mind as long as you're not going to get me in any trouble.

Crim. Doc. 186 at 62-63.  Not only did "Alice" tell Petitioner that she was 13 years old, Petitioner acknowledged that "most people think that's f[…]ed up" and that he did not mind so long as "Alice" would not get him into "any trouble."  Contrary to Petitioner's assertion that he disbelieved "Alice" was 13, Petitioner expressed no doubt at "Alice's" representation of her age and even responded positively to it.  Id. at 105-06.

Later, after Petitioner had evidently seen that "Alice" was 13 according to her VampireFreaks.com webpage, "Alice" again told Petitioner that she was 13 years old and an eighth grader:

CPTLIQUIDICE999999:  The one on VF you look a lot older than 13.

LIL_JAX_GURL:   Thanks, that's a compliment.

CPTLIQUIDICE999999:  I'd say like 17 or 18.

LIL_JAX_GURL:   OMG.

THE WITNESS:   Which is oh my gosh.

LIL_JAX_GURL:   I wish.  Wish.

THE WITNESS:   Corrected spelling.

LIL_JAX_GURL:   It's probably because I made it black and white to go with the VF website.

CPTLIQUIDICE999999:  Your face looks a lot different.  Did you lose weight?

LIL_JAX_GURL:  No.  I got a little taller.  Plus, I Photoshopped the eyes and lipstick a little to make it look more goth, LOL.

CPTLIQUIDICE999999:  Well, you look really hot.

LIL_JAX_GURL:  Thanks.  I try.  LOL.

CPTLIQUIDICE999999:  Well, you're doing a good job at it.  Where are you going to school at?

LIL_JAX_GURL:  Southside Middle.

CPTLIQUIDICE999999:  Wow.  I was going to guess you were in high school.

LIL_JAX_GURL:  <u>No.  I wish.  I told you, I'm 13.</u>

CPTLIQUIDICE999999:  What grade are you in?

LIL_JAX_GURL:  <u>Eighth.</u>

CPTLIQUIDICE999999:  I guess I was 14 in ninth, then.  It's been a while.

LIL_JAX_GURL:  You were smart, LOL.

CPTLIQUIDICE999999:  LOL.  I was 14 and turned 15 the first month of school starting.  I was lucky and had a birthday in Sept.

MR. BROWN:  Or September.

CPTLIQUIDICE999999:  <u>Man, now I do feel like I'd be robbing the cradle, LOL.  J/K.</u>

<u>Id.</u> at 71-72 (emphases added).  Again, Petitioner said nothing to "Alice" reflecting that he believed she was misstating her age, but instead responded that he felt like

he would be "rob[b]ing the cradle."[6] On several further occasions during online chats, "Alice" made even more references to her being 13 years old and being in the eighth grade. Id. at 95-96 ("Alice" asking Petitioner whether he had ever been out with a 13-year old before), 100 ("Alice" discussing how "lame" eighth grade guys are), 135-36 ("Alice" saying all she knew how to do was "lame eighth grade stuff, like hang out at the mall."), 155 ("Alice" telling Petitioner to "stay out of the eighth grade except for me. LOL.").

There were still other manifestations of "Alice's" immaturity, including her statements that: she could not get a car yet, id. at 74-75; she had no money, id. at 78; she lived at home with her mom, id. at 74; her mom would not approve of her having a boyfriend, id. at 77; she could not meet Petitioner during the week because she had to go to school, id.; she normally signed onto Yahoo! at 4:30 pm (consistent with the time at which Duval County middle schools end classes, 4:15 pm) and signed off at 6:30 pm, id. at 78; she had never had sex, id. at 99, and she thought "the Intracoastal" (a generally well-known waterway in northeast Florida) was a lake, id. at 102-03. Additionally, Petitioner stated that he "would get in a lot of trouble" if he got "Alice" pregnant, id. at 104-05, and that most girls of "Alice's" age would not show him their genitalia, id. at 154-55, reflecting that Petitioner understood "Alice" was underage.

---

[6]     Contrary to Petitioner's argument that him telling "Alice" she appeared to be 17 or 18 was an expression of skepticism in "Alice's" age, the statement was just as likely part of a predatory tactic to flatter the person whom he thought was a 13 year old girl.  That interpretation is particularly plausible viewed in context with the rest of the conversation, where Petitioner complimented "Alice" about appearing to have lost weight and looking "really hot."  See Crim. Doc. 186 at 71-72.

The record is so replete with evidence supporting the conclusion that Petitioner believed he was interacting with a 13-year old eighth grader – indeed, that Petitioner was positively attracted to "Alice" because of her young age – that there is no reasonable probability that further efforts by trial counsel to pursue a mistake-of-age defense would have changed the jury's verdict.  The jury already heard Petitioner's mistake-of-age defense and rejected it.  Petitioner has failed to show that if counsel had pursued any (or even all) of the marginal points he raises in his motion to vacate, the jury would have disregarded the abundance of evidence proving that Petitioner thought he was going to meet a 13-year-old for sex.

The Court also observes that Petitioner previously argued on direct appeal that there was insufficient evidence to support the conclusion that he believed "Alice" was a minor.  See Deal, 438 F. App'x at 810.  There, the Eleventh Circuit recognized many of the same points Petitioner raises here.  Id. at 811.  Nevertheless, the Eleventh Circuit rejected Petitioner's argument as "absurd" in light of the overwhelming evidence against him.  Id. at 810.  The Eleventh Circuit recounted, as the Court has done here, the multitude of ways in which "Alice" communicated that she was 13 years old and in the eighth grade, and how Petitioner responded positively to those representations.  Id. at 810-11.  The court further noted that, given the strength of the evidence, a reasonable jury could have discredited Petitioner's testimony that he thought "Alice" was not a minor.  Id. at 811.

Accordingly, given the strength of the undisputed evidence against Petitioner, there is no reasonable probability that counsel could have done anything differently

to alter the outcome of Petitioner's trial. <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1227-28 (11th Cir. 2002) (failure to investigate certain witnesses did not prejudice defendant where evidence of guilt was overwhelming). As such, Petitioner has failed to satisfy <u>Strickland</u>'s prejudice prong.

### 2. Inadequate preparation for cross-examining Detective Jones

Petitioner contends that trial counsel inadequately prepared to cross-examine Detective Jones (the undercover officer who posed as "Alice") in regard to several matters, including Detective Jones's mistaken testimony that Petitioner first contacted "Alice" in a romance chat room (rather than through Yahoo! instant messenger), Detective Jones's alleged departure from ICAC standards, and Detective Jones's method of preserving logs of his conversations with Petitioner. Petitioner argues that a thorough cross-examination along these lines would have undermined Detective Jones's credibility such that the jury would have discredited his testimony and believed Petitioner instead.

Counsel did not perform deficiently in any of these matters. First, counsel did force Detective Jones to concede during cross-examination that "Alice" was not in the Yahoo! romance chat room when Petitioner first contacted him, but rather that Petitioner initially contacted "Alice" through an instant message. (Crim. Doc. 186 at 189-95). Counsel also elicited testimony from Petitioner that he was not in the Yahoo! romance chat room when he first contacted "Alice." (Crim. Doc. 176-1 at 6). Thus, counsel obtained testimony from both sides to undermine Detective Jones's earlier testimony that Petitioner and "Alice" initially communicated through a Yahoo!

romance chat room.  However, the point was relatively trivial, and it is extremely unlikely that further cross-examination about whether Petitioner and "Alice" communicated through a romance chat room (as opposed to instant messenger) would have affected the jury's deliberations.  The medium of "Alice's" and Petitioner's communications does not change their content, and the content was nothing short of damning.  As the Eleventh Circuit noted on direct appeal, "in the light of overwhelming evidence of Deal's guilt, it is unlikely that Jones's earlier misstatement affected the jury's judgment." Deal, 438 F. App'x at 812 (citation omitted).  Petitioner has failed to establish either deficient performance or prejudice arising from counsel not cross-examining Detective Jones further about whether Petitioner and "Alice" communicated through a romance chat room.

Second, Counsel did not perform deficiently by not cross-examining Detective Jones about how the detective allegedly deviated from ICAC Operational and Investigative Standards while investigating Petitioner.  Petitioner contends that Detective Jones violated ICAC Standard 4.3.4.c by using the image of an actual minor for "Alice's" online profile, as Detective Jones testified he had used the photograph of a fellow detective from when she was 13 years old.  (Doc. 1 at 13, 42).  Petitioner contends that counsel should have cross-examined Detective Jones on the matter, thereby forcing him to concede either that he violated ICAC protocol or that he in fact used the image of someone over 18.  As Detective Jones had already testified that he used the image of a fellow officer from when she was 13, it is only speculation that Detective Jones would have backtracked and stated that the girl in the photograph

was actually over age 18.  That being the case, Detective Jones would likely have reiterated on cross-examination that the image was of a 13-year old girl.  Considering that the heart of Petitioner's defense was mistake-of-age, part of which was Petitioner's testimony that the girl in "Alice's" picture appeared to be much older than 13, it was not unreasonable for counsel to not want the jury to hear a second time that the girl in the picture was, in fact, 13 years old.  For counsel to cross-examine Detective Jones in the hope of getting him to admit that he used the image of an actual minor would have been to undermine Petitioner's mistake-of-age theory by highlighting that the picture Petitioner viewed was, in fact, of a real 13-year old. Accordingly, counsel did not perform unreasonably by not further cross-examining Detective Jones on the matter.  Moreover, because Petitioner's proposed line of cross-examination would have risked drawing the jury's attention to a fact that would have undermined his mistake-of-age defense, he has not demonstrated prejudice either. See Rhode v. Hall, 582 F.3d 1273, 1287 (11th Cir.2009) (movant cannot show prejudice where omitted evidence is incompatible with defense strategy).

Nor did counsel perform deficiently by not cross-examining Detective Jones about allegedly violating ICAC Standard 4.3.4.d (see Doc. 1 at 13), which advises that a detective should allow the target of the investigation "to set the tone, pace, and subject matter of the online conversation" and that only the target should initiate the transfer of pictures or images.  Counsel did extensively cross-examine Detective Jones for allegedly deviating from ICAC protocol by making suggestive comments during conversations with Petitioner.  See Crim. Doc. 186 at 203-05, 215-38.  Counsel

built on that testimony to put forth an entrapment defense in closing argument, arguing that Detective Jones's suggestive comments lured an otherwise innocent person into committing the charged offenses.  (See Crim. Doc. 188 at 36-40, 43).  Like Petitioner's mistake-of-age defense, however, the jury rejected that theory as well.  The defense did not fail for lack of effort, but because the considerable weight of evidence against Petitioner reflected that he initiated contact with "Alice," and that Petitioner was a willing and eager participant in explicit discussions with the fictitious minor.  Given the abundantly incriminating evidence from Petitioner's chat logs with "Alice," Petitioner has failed to show a reasonable probability that further cross-examining Jones about deviating from ICAC Standard 4.3.4.d would have inspired the jury to acquit him.  See, e.g., Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (en banc) (citing Waters v. Zant, 979 F.2d 1473, 1490 (11th Cir. 1992)) ("We agree with the panel's holding that Waters' guilt stage ineffective assistance of counsel claims are due to be denied because the evidence of guilt was so overwhelming that Waters cannot show prejudice from any of the claimed shortcomings of his counsel at the guilt stage."); Fortenberry, 297 F.3d at 1227-28.

Finally, Petitioner implies that the government may have tampered with or manipulated the record of Petitioner's and "Alice's" online conversations, and that counsel rendered ineffective assistance by failing to cross-examine Detective Jones concerning his method for preserving the online records.  (See Doc. 1 at 14-15, 34).  This contention lacks merit.  When Petitioner took the stand and the prosecutor confronted him with the record of "Alice's" online profiles and their conversations, not

only did Petitioner not challenge the accuracy or authenticity of those records, he admitted that he said what was set forth in the records.  (Crim. Doc. 176-1 at 13, 47-51, 55-61, 70).   Therefore, Petitioner suffered no prejudice from counsel not challenging the authenticity of the online profile or chat records.[7]

### 3.  Not objecting to the admission of Petitioner's Yahoo! account log-in record

Petitioner contends that counsel rendered ineffective assistance when he did not object to the admission of the log-in record for Petitioner's Yahoo! account, which the Court admitted without objection as Government's Exhibit 31.  (See Crim. Doc. 186 at 184-86).   Petitioner contends that because a magistrate judge's report recommended the suppression of evidence seized from the Yahoo! account, counsel performed deficiently by not objecting to the admission of the exhibit.  (Doc. 1 at 23-24).

Petitioner raised the same issue on direct appeal when he argued that the Court erred in admitting Exhibit 31.   See Initial Brief of Appellant at 18, United States v. Deal, 438 F. App'x 807 (11th Cir. 2011), No. 10-15525, 2011 WL 1228847 at

---

[7]   Similarly, there is not a reasonable probability that any of the findings contained in Marney's computer forensics report, see Doc. 1 at 33-57, would have influenced the jury to acquit Petitioner in light of all of the evidence. The report's findings relate either to points that are cumulative of those already made at trial (e.g., metadata indicating that "Alice's" picture was three years old), insignificant discrepancies in Detective Jones's testimony (e.g., whether "Alice" had been admitted to a Yahoo! romance chat room when Petitioner first contacted her), or whether Detective Jones failed to properly preserve records of "Alice's" online profiles and chats with Petitioner – an issue mooted by Petitioner's admission that the chat records were accurate. Accordingly, the Court has considered the new expert's report but is not persuaded that it demonstrates any ineffectiveness by counsel.

*18; see also Deal, 438 F. App'x at 811.   The Eleventh Circuit concluded that Petitioner was not prejudiced by the admission of the exhibit because he had already admitted that he engaged in the conversations connected with the Yahoo! account. Id.  That conclusion applies here as well.  Irrespective of whether counsel should have objected to the admission of Petitioner's Yahoo! log-in record, he was not prejudiced by its admission in light of his acknowledgment that he engaged in the incriminating online conversations on which the prosecution relied.

### B. Ground Two:  Counsel's alleged failure to ensure that Petitioner was tried before an impartial jury

Petitioner asserts that publicity from the abduction and murder of a 7-year old girl in Clay County, Florida in October 2009 infected the jury panel, if not the entire community, with such bias that Petitioner could not receive a fair trial.  (Doc. 1 at 26-31).  Petitioner notes that a single potential juror voiced doubt about his ability to impartially judge a person accused of attempting to have sex with a minor in the wake of the Somer Thompson case, though none of the other venire members expressed a similar opinion.  Id. at 29-30.  Even though that potential juror was dismissed, Petitioner contends that counsel rendered ineffective assistance either by failing to move for a change of venue, or for not conducting a sufficient voir dire of the remaining potential jurors.

Petitioner would not have been entitled to a change of venue even had he so moved.  The standard for a change of venue is well established, and it is onerous:

> The trial court may be unable to seat an impartial jury because of prejudicial pretrial publicity or an inflamed community atmosphere. In such a case, due process requires the trial court to grant defendant's

motion for a change of venue. This does not mean, however, that a defendant is entitled to a change of venue whenever potential jurors have been exposed to the facts of the case.

It is not required that jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

A defendant is entitled to a change of venue if he can demonstrate either "actual prejudice" or "presumed prejudice." To find the existence of actual prejudice, two basic prerequisites must be satisfied. First, it must be shown that one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty. Second, these jurors, it must be determined, could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court. If a defendant cannot show actual prejudice, then he must meet the demanding presumed prejudice standard.

Prejudice is presumed from pretrial publicity when pretrial publicity is sufficiently prejudicial and inflammatory and the prejudicial pretrial publicity saturated the community where the trials were held. The presumed prejudice principle is rarely applicable, and is reserved for an extreme situation. Where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from the community, jury prejudice is presumed and there is no further duty to establish bias.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1004-05 (11th Cir. 2007) (citing Meeks

v. Moore, 216 F.3d 951, 960-61 (11th Cir. 2000)) (emphasis in original).  In Gaskin,

the Eleventh Circuit declined to presume prejudice from pretrial publicity even where

a local newspaper had published multiple inflammatory articles about the defendant's murder case, but where such publicity had not saturated the community. Id. at 1005.

Petitioner's argument that trial counsel should have moved for a change of venue is even weaker.  First, Petitioner has failed to demonstrate that actual prejudice warranted a change of venue.  Petitioner has not produced any evidence that any of the empaneled jurors harbored any bias against Petitioner, that any of them had prejudged his case, or that any of the jurors were unable or unwilling to fairly weigh the evidence.  Only a single potential juror mentioned having any bias, and counsel had that individual struck from the venire.  Second, Petitioner has failed to establish the existence of presumed prejudice.  There is no indication whatsoever that any publicity from Petitioner's case reached the community.  The only publicity Petitioner points to was based on the unrelated case of Somer Thompson, which did not have any facts, parties, or charges in common with Petitioner's case.  The media attention given to Somer Thompson's murder is far too attenuated from Petitioner's case to satisfy the very high threshold for establishing presumed prejudice, which is only "reserved for an extreme situation."  Id. at 1004.  Because Petitioner has not shown that he could have satisfied the standard for a change of venue, he has failed to show either that counsel performed deficiently by not so moving, or that he suffered prejudice as a result.  See Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (A court may credit as professionally reasonable counsel's decision not to file what he reasonably believes to be a meritless motion).

Similarly, Petitioner has failed to show that counsel rendered ineffective assistance by not individually questioning the jurors on their knowledge of the Somer Thompson murder. Counsel for the United States and Petitioner, as well as the Court, questioned each potential juror on whether there was anything that would prevent them from fairly considering the evidence, and only one expressed concern about potential bias due to the Somer Thompson case. (See Doc. 1 at 29-30; see also Doc. 9 at 17-18). Counsel successfully struck that individual from the venire, along with six others who had mentioned some type of personal experience related to sexual violence. See Doc. 9 at 18. There is no indication that the Somer Thompson case biased any of the remaining venire members. Nor is there evidence that any of the remaining venire members – let alone any of those who were ultimately selected as jurors – held a preformed opinion about Petitioner's overall guilt. Accordingly, Petitioner has failed to establish either that counsel performed deficiently during voir dire, or that such performance prejudiced Petitioner by allowing a biased jury to be empaneled.

Petitioner's contention that counsel failed to ensure a trial before an impartial jury is based on loose inferences drawn from the publicity given to the murder of Somer Thompson. Such loose and speculative inferences do not support so much as granting an evidentiary hearing. "A petitioner is not entitled to an evidentiary hearing… when his claims are merely conclusory allegations unsupported by specifics…" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir.1991) (emphasis in original) (internal citations and quotations omitted). A district court need not hold

an evidentiary hearing if the petitioner's allegations are "patently frivolous," "based on unsupported generalizations," or "affirmatively contradicted by the record." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11th Cir. 1989). Therefore, Petitioner's allegation in Ground Two that counsel rendered ineffective assistance is due to be denied without an evidentiary hearing. Accordingly, it is hereby

**ORDERED:**

1. Petitioner David Marshall Deal's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against David Marshall Deal, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). <u>Id.</u> "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id.</u> at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537

U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.   Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

      **DONE AND ORDERED** at Jacksonville, Florida this 27th day of April, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Petitioner David Marshall Deal